IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK PHILLIPS, et al., | : | |
| Plaintiffs, | : | Case No. 2:04-CV-207 |
| v. | : | Judge Holschuh |
| DEPUTY TROY STEVENS, et al., | : | Magistrate Judge Abel |
| Defendants. | : | |
| | : | |

**MEMORANDUM AND ORDER**

Following their arrest at a Rolling Stones concert on October 21, 2002, Plaintiffs Patrick Phillips and Timothy Mollette filed suit pursuant to 42 U.S.C. § 1983, alleging violations of their Fourth Amendment rights. This matter is currently before the Court on Defendant Michael Kirkpatrick's motion for summary judgment. (Record at 45). Because the Court finds that Kirkpatrick is entitled to qualified immunity, that motion is granted.

**I.   Background**

On October 21, 2002, Plaintiffs attended a Rolling Stones concert at Nationwide Arena in Columbus, Ohio. During the concert, Plaintiffs purchased several t-shirts and other souvenirs from licensed vendors inside the arena. Franklin County Sheriff's Deputies Sanford Crayton and Troy Stevens were working a plainclothes detail to stymie the sale of "bootleg" Rolling Stones merchandise. After the concert, as Plaintiffs left the arena, carrying the bag containing the Rolling Stones merchandise they had purchased, Crayton and Stevens approached them to determine whether that merchandise was licensed.

While the details of what happened next are hotly disputed, suffice it to say that a scuffle ensued. Plaintiffs, allegedly believing that Crayton and Stevens were attempting to rob them, tried to fight them off. Phillips allegedly pushed Deputy Stevens and punched him several times. Stevens was later treated for a contusion on his left temple. (Stevens Dep. at 80, 86-87, 119). Mollette allegedly "sucker punched" Deputy Crayton, who was later treated for an injured lip, abrasions, and contusions. (Crayton Dep. at 38, 43-44). Four uniformed Columbus police officers working in the area rushed to the scene to break up the fight. Mollette and Phillips were arrested by the Columbus police officers and taken into custody.

Defendant Michael Kirkpatrick was a Franklin County Sheriff's Deputy on duty that evening. He was not present when Plaintiffs were arrested. He was, however, ordered to report to the Franklin County Sheriff Detective Bureau for the purpose of transporting Plaintiffs to the Franklin County Jail. (Kirkpatrick Aff. ¶ 6, Ex. 1 to Mot. Summ. J.). Kirkpatrick met with Detective Shepherd at the Detective Bureau. Shepherd told him that Plaintiffs had assaulted Deputies Crayton and Stevens, who were being treated for their injuries. (Kirkpatrick Aff. ¶ 7). Typically, criminal complaints are prepared by the investigating detective and sworn to by the victim or witnesses. However, since Crayton and Stevens were not available, Shepherd directed Kirkpatrick to transport Plaintiffs to the Franklin County Jail and swear to the criminal complaints Shepherd had prepared. (Kirkpatrick Aff. ¶¶ 8, 10-11). Plaintiffs were charged with assaulting a peace officer, and later indicted by a grand jury. The charges against them were eventually dismissed because a key witness was out of town on military duty.

Plaintiffs filed suit against Deputies Crayton, Stevens, and Kirkpatrick, Franklin County Sheriff Jim Karnes, Columbus police officers Thomas Paige, Donald Paden, James Barnes, Anthony Richardson, the City of Columbus, and RST Concerts, Inc.  Plaintiffs seek relief under 42 U.S.C. § 1983, which states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  In order to recover under § 1983, a plaintiff must prove that a person, acting under color of law, violated his or her rights as guaranteed by the Constitution or laws of the United States.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).  Plaintiffs allege that Defendants, while acting under color of state law, violated their rights under the Fourth and Fourteenth Amendments to the Constitution.  Plaintiffs' claims include unlawful search and seizure, arrest without probable cause, excessive and unnecessary force, and prosecution without probable cause.

Deputy Kirkpatrick played a very limited role.  He simply transported Plaintiffs to the Franklin County Jail and filed the criminal complaints that Detective Shepherd had prepared.  The First Amended Complaint alleges that Defendant Kirkpatrick "caused the Plaintiffs to be . . . charged with criminal offenses.  These charges were false, and brought without probable cause.  Those charges have been resolved favorably to Plaintiffs." (Am. Compl. ¶ 18).   Deputy Kirkpatrick has filed a motion for summary judgment on all claims against him.

3

**II.     Standard of Review**

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as

well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001).  Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original).  A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties."  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).  See also Anderson, 477 U.S. at 248.  An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.  The nonmoving party must demonstrate that "there is a genuine issue for trial," and  "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

### III.  Analysis

Defendant Kirkpatrick has asserted the defense of qualified immunity. He argues that he is entitled to qualified immunity because there was no constitutional violation; probable cause existed for Plaintiffs' arrests and prosecutions. Kirkpatrick further argues that even if there were no probable cause for the arrests and prosecutions, he is entitled to qualified immunity because a reasonable officer could have believed that probable cause existed for the filing of the criminal complaints at the direction of Detective Shepherd of the Detective Bureau.

"Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory

6

or constitutional rights of which a reasonable person would have known.' " Estate of Carter v. Detroit, 408 F.3d 305, 310-11 (6th Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, (1982)).

> Qualified immunity involves a three-step inquiry. First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." Williams v. Mehra, 186 F.3d 685, 691 (6th Cir.1999) (en banc) (citing Dickerson v. McClellan, 101 F.3d 1151, 1158 (6th Cir.1996)); see also Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003).

    **A.**    **Was there a Constitutional Violation?**

The first question is whether, viewing the evidence in a light most favorable to Plaintiffs, a constitutional violation occurred. Plaintiffs deny that they assaulted Stevens and Crayton. They claim that the charges filed against them -- for assaulting a peace officer -- were fabricated. If Plaintiffs are to be believed, then they were, in fact, arrested and prosecuted without probable cause in violation of their Fourth Amendment rights.

    **B.**    **Was the Constitutional Right Clearly Established?**

At the time of Plaintiffs' arrest, the right to be free from arrest and prosecution without probable cause was clearly established. Donovan v. Thames, 105 F.3d 291, 297-98 (6th Cir. 1997); Spurlock v. Satterfield, 167 F.3d 995, 1006 (6th Cir. 1999).

    **C.**    **Was Kirkpatrick's Conduct Objectively Unreasonable in Light of Clearly Established Constitutional Rights?**

7

Even if Plaintiffs' clearly established constitutional rights were violated, Deputy Kirkpatrick is nevertheless entitled to qualified immunity because his conduct, in filing the criminal charges against Plaintiffs, at the direction of Detective Shepherd, was not objectively unreasonable.

In the Court's view, this case is analogous to Feathers v. Aey, 319 F.3d 848, 851 (6th Cir. 2003). In Feathers, an anonymous caller told a police dispatcher that a drunk, white, bearded male, standing on a porch on North Howard Street, had pointed something at him and told him to shut up. The caller suggested that the dispatcher "have somebody come by here." The dispatcher radioed a patrol car to investigate. The dispatcher told the patrolmen to look for a suspicious person, possibly drunk and carrying a weapon. The officers spotted Mr. Feathers, a man who matched the description given by the dispatcher. They approached him and ordered him to take his hands out of his pockets. When Feathers failed to comply with the order, they seized him and he bit one of the officer's fingers. They smelled alcohol on him and found a utility knife in his pocket. They arrested him and charged him with assault against a peace officer, carrying a concealed weapon, and resisting arrest.

Feathers filed suit, alleging violations of his Fourth Amendment rights. The officers argued that they were entitled to qualified immunity. The Sixth Circuit held that the officers did not have sufficient information to support a finding of reasonable suspicion for the Terry stop. Although the officers did not know that the dispatcher had received the call from an anonymous tipster, who offered no evidence of reliability, the dispatcher's knowledge was imputed to the officers. Citing United States v. Hensley, 469 U.S. 221 (1985), the court noted that "if the dispatcher had sufficient information to find reasonable suspicion for a Terry stop, the stop was

8

permissible. But if the dispatcher lacked sufficient information to satisfy the reasonable suspicion requirement . . . then the stop violated Feathers's Fourth Amendment rights." Feathers, 319 F.3d at 849. Because the court found that the caller did not provide enough information to support a reasonable suspicion, the court found that the officers violated Feathers's constitutional rights. The court further found that those rights were clearly established. Id. at 850.

The court nevertheless found that the officers' conduct was not objectively unreasonable and that they were entitled to qualified immunity.

> [T]he officers knew only what had been reported from the dispatch, and efficient law enforcement requires-at least for the purposes of determining the civil liability of individual officers-that police be permitted to rely on information provided by the dispatcher. If the dispatcher's information were accurate and reliable, as the police presumed, the totality of circumstances would justify the Terry stop. This is precisely the scenario contemplated in Hensley, in which, after reasoning that a stop based on a bulletin that was itself issued in the absence of reasonable suspicion would violate the Fourth Amendment, the Supreme Court stated that, "[i]n such a situation, of course, the officers making the stop may have a good-faith defense to any civil suit." Hensley, 469 U.S. at 232, 105 S.Ct. 675. So although the stop violated the Fourth Amendment because the authorities' collective information did not amount to reasonable suspicion, Feathers cannot prevail in a § 1983 suit because the individual defendants had a sufficient factual basis for thinking that they were acting consistently with Terry.

Id. at 851.

Likewise, in the case at hand, the Court finds that Deputy Kirkpatrick is entitled to qualified immunity because his conduct, in filing the criminal complaints at Detective Shepherd's request, was not objectively unreasonable. Although Kirkpatrick did not witness the alleged assaults, he was entitled to rely on Shepherd's statement that Plaintiffs had assaulted

9

Deputies Stevens and Crayton, and that Stevens and Crayton wanted to press charges against them.

Plaintiffs concede that, under many circumstances, a police officer may act solely in reliance on another officer's statement. According to Plaintiffs, however, it was unreasonable for Kirkpatrick to swear to, and to file, the criminal complaints because he was given so little information about the incident. He knew only what Shepherd had told him, and it is undisputed that Shepherd did not witness the alleged assault. Shepherd, who is not a defendant in this case, drafted the criminal complaints at the request of Deputies Stevens and Crayton.

The Supreme Court noted in Hensley "that effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." 469 U.S. at 231 (quoting United States v. Robinson, 536 F.2d 1298, 1299 (1976)). See also Vela v. White, 703 F.2d 147, 152 (5th Cir. 1983) (granting qualified immunity to an officer who followed his supervisor's order to arrest a woman at the police station, even though the officer did not witness the altercation, and noting that it would not be fair, under the circumstances of that case, to force the officer to interrogate his superior "as to the reasons for his order, at the risk of being held liable for damages for an unlawful arrest.").

In the instant case, Kirkpatrick was told by Shepherd that two plainclothes officers had been assaulted by Plaintiffs. Shepherd also told him that because the injured officers were receiving medical attention, they were unavailable to swear to the complaints. (Kirkpatrick Aff.

10

¶¶ 7-8).[1]  Shepherd therefore directed Kirkpatrick to transport Plaintiffs to the jail, swear to the criminal complaints that Shepherd had prepared, and file those complaints.  Kirkpatrick states that he relied in good faith on Shepherd's representations regarding the truthfulness of the information contained in those complaints.  (Id. at ¶ 12).

Under the circumstances presented here, Kirkpatrick's reliance cannot be considered objectively unreasonable.  Plaintiffs apparently contend that before Kirkpatrick could follow Shepherd's instructions to file the complaints, he was required to first interrogate Detective Shepherd, a superior officer, concerning exactly what evidence Shepherd had to support the charges that were being filed and then make his own judgment as to whether probable cause existed to file charges against Plaintiffs.  Plaintiffs' argument, in my judgment, is unrealistic, particularly in light of the fact that there is absolutely no evidence that would have given Kirkpatrick any reason to question Shepherd.  Moreover, Plaintiffs have cited no case in which a police officer was held liable simply for following a superior officer's instructions to file a criminal complaint.  Because Kirkpatrick's reliance on Shepherd's statement was not objectively unreasonable, the Court concludes that Kirkpatrick is entitled to qualified immunity.

Even if Kirkpatrick were not entitled to qualified immunity, it is unlikely that Plaintiffs would be able to succeed on their § 1983 claim against him.  That claim, based on the right to be free of prosecution without probable cause, is essentially a claim of malicious prosecution.  As Kirkpatrick notes, the current state of Sixth Circuit law concerning the elements of a malicious

---

[1] Plaintiffs contend that records show that Crayton and Stevens had, in fact, been discharged from the hospital by the time Kirkpatrick filed the complaints.  There is no evidence, however, that Kirkpatrick knew of the discharge, or had any reason to question Shepherd's statement that they were unavailable.

prosecution claim brought under § 1983 is unsettled at best.[2] However, as the Sixth Circuit noted in Thacker v. City of Columbus, 328 F.3d 244, 259 (6th Cir. 2003), it is clear that, at the very least, a plaintiff must show that there was no probable cause to justify his arrest and prosecution.

In this case, because Plaintiffs were indicted by a grand jury, it would appear that they are precluded from arguing that there was no probable cause for their prosecutions. The Sixth Circuit has held that a grand jury indictment "conclusively determines the existence of probable cause for the purpose of holding the accused to answer" and bars a constitutional claim. Barnes v. Wright, 449 F.3d 709, 716 (6th Cir. 2006) (quoting Higgason v. Stephens, 288 F.3d 868, 877 (6th Cir. 2002)).

**IV. Conclusion**

Because the Court concludes that Deputy Kirkpatrick is entitled to qualified immunity, the Court **GRANTS** his motion for summary judgment (Record at 45).

**IT IS SO ORDERED.**

Date: March 29, 2007  /s/ **John D. Holschuh**
John D. Holschuh, Judge
United States District Court

---

[2] The apparent conflicting and confusing decisions within the Sixth Circuit are summarized in Joseph G. Yannetti's Note, Who's on First, What's on Second, and I Don't Know About the Sixth Circuit: a § 1983 Malicious Prosecution Circuit Split that Would Confuse Even Abbott and Costello, 36 Suffolk U.L. Rev. 513 (2003).

12