IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK A. PHILLIPS, et al., | : | |
| Plaintiffs, | : | Case No. 2:04-cv-207 |
| v. | : | Judge Holschuh |
| DEPUTY TROY STEVENS, et al., | : | Magistrate Judge Abel |
| Defendants. | : | |
| | : | |

**MEMORANDUM AND ORDER**

Following their arrest at a Rolling Stones concert on October 21, 2002, Plaintiffs Patrick Phillips and Timothy Mollette filed suit pursuant to 42 U.S.C. § 1983 seeking recovery for alleged violations of their Fourth Amendment rights. Plaintiffs sued a number of law enforcement officers, including Officer Donald Paden of the Columbus Police Department, who was at the scene and who later charged Mollette with resisting arrest. This matter is currently before the Court on Plaintiff Mollette's motion for summary judgment against Officer Paden on the claim of prosecution without probable cause. (Record at 40).

**I.     Background**

On October 21, 2002, Plaintiffs attended a Rolling Stones concert at Nationwide Arena in Columbus, Ohio. During the concert, Plaintiffs purchased several t-shirts and other souvenirs from licensed vendors inside the arena. Both men had been drinking; Mollette also admitted to smoking marijuana. (Phillips Dep. at 24; Mollette Dep. at 22, 108-109). Franklin County Sheriff's Deputies Sanford Crayton and Troy Stevens were working a plainclothes detail to stymie the sale of "bootleg" Rolling Stones merchandise. After the concert, as Plaintiffs left the

arena, carrying the bag containing the Rolling Stones merchandise they had purchased, Crayton and Stevens approached them to determine whether that merchandise was licensed.

While the details of what happened next are hotly disputed, suffice it to say that a scuffle ensued.  Plaintiffs, allegedly believing that Crayton and Stevens were attempting to rob them, tried to fight them off.  Phillips allegedly pushed Deputy Stevens and punched him several times.  Stevens was later treated for a contusion on his left temple.  Mollette allegedly "sucker punched" Deputy Crayton, who was later treated for an injured lip, abrasions, and contusions.

Four uniformed Columbus police officers, Thomas Paige, Donald Paden, James Barnes, and Anthony Richardson, who were directing traffic, rushed to the scene to break up the fight.  Officer Paige was the first to arrive, and he tried to separate Crayton and Mollette.  (Paige Dep. at 14).  When Mollette freed himself from Paige's grasp, Officer Paige stepped forward and grabbed his arm.  (Paige Aff. ¶ 8; Mollette Dep. at 60-61).  The other officers then arrived on the scene.  They allegedly forced Mollette to the ground, struck him repeatedly, maced him, handcuffed him, and fettered his legs with a hobble strap.  Mollette and Phillips were arrested and taken into custody.  Both were charged with assault on a peace officer.  In addition, Officer Paden charged Mollette with resisting arrest.  All charges against Plaintiffs were eventually dismissed.

Plaintiffs filed suit against all of the officers who participated in the arrest and against Franklin County Sheriff Jim Karnes, Sheriff's Deputy Michael Kirkpatrick, the City of Columbus, and RST Concerts, Inc.  Plaintiffs seek relief under 42 U.S.C. § 1983 for unlawful search and seizure, arrest without probable cause, excessive and unnecessary force, and prosecution without probable cause.  In connection with the criminal charge of resisting arrest,

Plaintiff Mollette has moved for summary judgment on his claim against Officer Paden for prosecution without probable cause.

## II.     Standard of Review

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)).  See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing

3

that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must

4

demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

**III.    Discussion**

Plaintiff Mollette seeks relief under 42 U.S.C. § 1983. That statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper

5

>  proceeding for redress . . .

42 U.S.C. § 1983. In order to recover under § 1983, a plaintiff must prove that a person, acting under color of law, violated his or her rights as guaranteed by the Constitution or laws of the United States. See Adickes, 398 U.S. at 150 (1970).

There is no dispute that Officer Paden was acting under color of state law when he filed criminal charges against Mollette for resisting arrest, a violation of Ohio Revised Code § 2921.33(B). The criminal complaint that Paden filed reads as follows:

> Complainant, being duly sworn, states that the above named defendant, at Franklin County/Columbus, Ohio, on or about the 21 day of October, 2002 did: Recklessly by force resist the lawful arrest of himself to wit: Timothy D. Mollette and during the course of or as a result of the resistance of interference to wit: wrestled, fought by swinging his arms, refused to place his hands behind his back, pulling away, from Officers Paden #1816, Richardson #1435, Paige #1585, and Sgt. Barnes #5105 Columbus Police, did cause physical harm to wit: injury and bruise to Sgt. Barnes right hand, and injury and bruise to Officer Richardson's #1435 right knee in violation of section 2921.33(B) ORC a misdemeanor of the 1st degree.

Ex. 1 to Mot. Summ. J.[1]

Mollette contends that Officer Paden lacked probable cause to believe that he had "recklessly or by force" resisted arrest. For probable cause to exist, the facts and circumstances within the officer's knowledge must be "sufficient to warrant a prudent person, or one of

---

[1] Ohio Revised Code § 2921.33(B) states:

> No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another person and, during the course of or as a result of the resistance or interference, cause physical harm to a law enforcement officer.

6

reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

Prosecution without probable cause is a violation of the Fourth Amendment to the United States Constitution, and is actionable under § 1983. Spurlock v. Satterfield, 167 F.3d 995, 1006 (6th Cir. 1999); Thacker v. City of Columbus, 328 F.3d 244, 259 (6th Cir. 2003). The law regarding malicious prosecution claims brought under § 1983, however, is not entirely settled, particularly in the Sixth Circuit.[2] Although the Sixth Circuit "has yet to resolve the elements of a federal malicious prosecution claim, it is clear that a plaintiff must show, at a minimum, "that there was no probable cause to justify [his] arrest and prosecution." Id. In Barnes v. Wright, 449 F.3d 709, 716 (6th Cir. 2006), the Sixth Circuit held that a grand jury indictment "conclusively determines the existence of probable cause," and precludes a plaintiff's claim of malicious prosecution. In Mollette's case, however, there is no evidence that he was ever indicted by a grand jury on the charge of resisting arrest.[3]

The Court therefore turns to the question of whether there is a genuine issue of material fact concerning whether Paden had probable cause to believe that Mollette violated Ohio Revised Code § 2921.33(B). "The existence of probable cause is a jury question, unless there is only one reasonable determination that is possible." Thacker, 328 F.3d at 255. The Court finds that, in this case, genuine issues of material fact preclude summary judgment.

---

[2] The apparent conflicting and confusing decisions in our Circuit are summarized in Joseph G. Yannetti's Note, Who's on First, What's on Second, and I Don't Know About the Sixth Circuit: a § 1983 Malicious Prosecution Circuit Split that Would Confuse Even Abbott and Costello, 36 Suffolk U.L. Rev. 513 (2003).

[3] The record of the proceedings in State v. Timothy Mollette has been expunged. (Mollette Dep. at 18).

Mollette denies that he was actively resisting resist.  Mollette contends that, without provocation, he was tackled from behind and slammed face-first into the pavement.  He alleges that the officers then physically assaulted him, striking his torso with their knees, fists and a flashlight, and macing him.  Mollette admits that, during the alleged assault, he tried to push himself up with his arms to prevent his head from banging against the pavement, but argues that he was entitled by law to take steps to defend against excessive or unnecessary violence.  See City of Columbus v. Fraley, 41 Ohio St. 2d 173, 180, 324 N.E.2d 735, 740 (Ohio 1975).

Mollette denies that he wrestled with the officers or fought by swinging his arms, as alleged by Officer Paden in the criminal complaint.  He notes that the officers all testified in their depositions that Mollette threw no punches at them.  (Paige Dep. at 23, 29; Richardson Dep. at 20-21; Barnes Dep. at 20; Paden Dep. at 25).  Mollette also notes that, although Officer Paden's complaint states that Mollette's conduct caused injury to Officer Barnes' right hand and to Officer Richardson's right knee, the officers testified that Mollette did not assault them.  Any bruises they suffered were likely caused when the officers struck him.

Defendants, however, note that Mollette admitted that when Officer Paige first grabbed his arm to break up the fight with Crayton, Mollette pulled his arm away and broke Paige's grip on him.  (Mollette Dep. at 60-61).  Mollette also admitted that while the officers were trying to get his hands behind his back, he was trying to push himself up from the pavement.  (Id. at 72-74).  Moreover, Mollette testified that it took "five to ten minutes" to take him into custody.  (Id. at 86).

8

The officers testified that they had to use force against Mollette because he was resisting arrest. Paden testified that Mollette was "[m]oving his arms, struggling, kicking, thrashing his body, trying to get up," and was pulling away from the officers. (Paden Dep. at 21; Paden 10/19/05 Aff. ¶¶ 4-6). Paden also testified that Mollette refused to put his hands behind his back so that the officers could handcuff him, and that Mollette "fought us for quite a period of time." (Id. at 25-26; Paden 10/19/05 Aff. ¶¶ 4-6). Even after being handcuffed, Mollette continued to kick his feet, necessitating the use of a hobble strap. (Paden 10/19/05 Aff. ¶ 6). Officer Richardson also stated that Mollette refused commands to put his hands behind his back, and kept putting his arms under his body and resisted by flailing his arms, kicking his feet, and trying to get up. (Richardson Aff. ¶¶ 5-6). Sergeant Barnes acknowledged that Mollette's face was hitting against the pavement, but testified that he did not believe that Mollette was simply trying to protect himself. (Barnes Dep. at 32). Paden also stated that "[i]t was never my observation or belief that Mollette was just trying to protect himself . . . Mollette failed to respond to loud, verbal commands and . . . impeded our efforts to take him into custody." (Paden 11/11/05 Aff. ¶ 6).

These conflicting versions of what transpired while the officers were attempting to handcuff Mollette preclude summary judgment. The question of whether Officer Paden had probable cause to believe that Mollette was resisting arrest, and the question of whether Mollette was entitled to defend himself against "excessive or unnecessary violence," depend entirely on the credibility of the witnesses.

9

**IV.     Conclusion**

Because there are genuine issues of material fact, Plaintiff Mollette's motion for summary judgment on his claim of prosecution without probable cause against Officer Paden (Record at 40) is **DENIED**.

**IT IS SO ORDERED.**


Date: March 29, 2007                                              /s/ **John D. Holschuh**
                                                                  John D. Holschuh, Judge
                                                                  United States District Court