IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK A. PHILLIPS, et al., | : | |
| Plaintiffs, | : | Case No. 2:04-cv-207 |
| v. | : | Judge Holschuh |
| DEPUTY TROY STEVENS, et al., | : | Magistrate Judge Abel |
| Defendants. | : | |
| | : | |

**MEMORANDUM AND ORDER**

Following their arrest at a Rolling Stones concert, Plaintiffs Patrick Phillips and Timothy Mollette filed suit pursuant to 42 U.S.C. § 1983, alleging violations of their Fourth Amendment rights by a number of law enforcement officers, including Columbus police officers Thomas Paige, Donald Paden, James Barnes, and Anthony Richardson.  This matter is currently before the Court on Plaintiff Mollette's motion for summary judgment on the issue of whether these officers used excessive force during the course of his arrest. (Record at 37).  For the reasons stated below, the Court denies Mollette's motion.

**I.  Background**

On October 21, 2002, Plaintiffs Phillips and Mollette attended a Rolling Stones concert at Nationwide Arena in Columbus, Ohio.  Both men were drinking; Mollette also admitted to smoking marijuana.  (Phillips Dep. at 24; Mollette Dep. at 22, 108-109).  During the concert, Plaintiffs purchased several t-shirts and other souvenirs from licensed vendors inside the arena. That evening, Franklin County Sheriff's Deputies Sanford Crayton and Troy Stevens were working a private plainclothes detail to stymie the sale of "bootleg" merchandise outside the

Rolling Stones concert.  After the concert, as Plaintiffs left the arena, Phillips was showing Mollette some of the Rolling Stones merchandise he had purchased.  Crayton and Stevens approached them to determine whether the merchandise was authentic.

Subsequent events are disputed.  According to Deputy Stevens, he approached Phillips with his badge in his hand and identified himself as a Franklin County Sheriff's Deputy.  (Stevens Dep. at 80).  After Stevens asked to see the bag of merchandise, Phillips elbowed Stevens and punched him several times.  (Id. at 86-87, 95, 99).  Stevens sustained a contusion on his left temple from Phillips' punches.  (Id. at 119).  Meanwhile, Deputy Crayton allegedly approached Mollette and identified himself as a Franklin County Sheriff's Deputy.  (Crayton Dep. at 30).  Crayton saw Phillips push Stevens, and then Mollette "sucker punch[ed]" Crayton.  (Id. at 38, 43).  In the melee that followed, Mollette told Crayton, "you're not a cop."  (Id. at 39).  Crayton was later treated at Grant Hospital for an injured lip, abrasions, and contusions.  (Id. at 44).

Thomas Paige, Anthony Richardson, Donald Paden, and Jim Barnes were four uniformed Columbus police officers who were directing traffic in the area.  They rushed to the scene to break up the fight between Mollette and Crayton.  Being the first to arrive, Officer Paige "grabbed both parties as to separate them."  (Paige Dep. at 14).  At this point, Mollette claimed he was being robbed and Deputy Crayton identified himself as a police officer.  (Id).  Officer Paige requested proof, and Deputy Crayton proceeded to pull his badge out from under his sweatshirt or jacket.  (Id. at 15).  According to Paige, while Crayton showed his identification, Mollette punched Crayton in the face again.  (Paige Aff. ¶ 8; Paige Dep. at 17).[1]  Mollette then

---

[1] Mollette denies that he hit Crayton again after Paige arrived.

2

freed himself from Paige's grasp, prompting Paige to step forward and again grab his arm. (Paige Aff. ¶ 8; Mollette Dep. at 60-61).

Officer Richardson arrived in time to see Mollette break free from Paige's grasp. Richardson stated that Paige was struggling with Mollette, so Richardson took hold of Mollette's arm and forced him to the ground.  Mollette refused commands to put his hands behind his back. He kept putting his arms under his body and resisted by flailing his arms, kicking his feet, and trying to get up.  (Richardson Aff. ¶¶ 5-6).  Officer Paden and Sergeant Barnes joined the effort to handcuff Mollette.  Varying degrees of force were used in an attempt to restrain Mollette, including two separate mace bursts (Paden Aff. ¶ 4), fist strikes (Paden Aff. ¶ 5), knee strikes (Richardson Aff. ¶ 7), and blows using a flashlight (Paden Aff. ¶ 6).  Finally, the officers were able to handcuff Mollette.  Due to Mollette's continued and incessant kicking, they also fettered his legs with a hobble strap.  (Richardson Aff. ¶ 7).

Plaintiff Mollette's version of what happened is significantly different.  He contends that two men, dressed in jeans and sweat-shirts, ran up to them in a threatening manner.  The men made no effort to identify themselves as police officers.  Upon reaching Phillips, one of the men grabbed the bag of merchandise and tried to pull it away.  (Mollette Dep. at 37).  The other man grabbed Mollette's shoulder.  Plaintiffs, believing the two men to be assailants, attempted to escape.  (Id. at 53).  Mollette admits that he threw some punches at Crayton, but argues that he was acting in self-defense.  (Id. at 55).

Columbus police officers Paige, Barnes, Richardson, and Paden then arrived on the scene.  One of the officers grabbed Mollette's arm, and when Mollette attempted to pull away, others tackled him from behind, slamming him face-first into the street.  (Id. at 60-63). Mollette

3

claims that these officers then subjected him to a brutal beating that he neither instigated nor provoked. Mollette alleges that the officers repeatedly struck his torso with their knees, fists and a flashlight, and sprayed him with mace. (Id. at 69). During the alleged assault, Mollette, who did not understand what was happening or why he was being assaulted, tried to push himself up with his arms in order to protect his face from scraping against the pavement. (Id.).

Both plaintiffs were charged with assault on a peace officer. Mollette was also charged with resisting arrest. All charges were eventually dismissed. Plaintiffs then filed suit against Crayton, Stevens, Paige, Richardson, Barnes, and Paden. They also sued Franklin County Sheriff's Deputy Michael Kirkpatrick, Sheriff Jim Karnes, the City of Columbus, and RST Concerts, Inc. Plaintiffs seek recovery under 42 U.S.C. § 1983 for alleged violations of their Fourth Amendment rights. They claim that they were victims of unlawful search and seizure, arrest and prosecution without probable cause, and excessive and unnecessary use of force.

Plaintiff Mollette has moved for partial summary judgment on the issue of whether Defendants Paige, Richardson, Barnes and Paden used excessive force during the course of his arrest.

## II.     Standard of Review

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

4

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." <u>Kendall v. Hoover Co.</u>, 751 F.2d 171, 174 (6th Cir. 1984). <u>See also</u> <u>Anderson</u>, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. <u>See also</u> <u>Leary</u>, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." <u>Hall v. Tollett</u>, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing

party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

### III. Discussion

Plaintiff Mollette has moved for summary judgment on his "excessive force" claim against Columbus police officers Paige, Richardson, Paden, and Barnes. He seeks relief pursuant to 42 U.S.C. § 1983. That statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. In order to recover under § 1983, a plaintiff must prove that a person, acting under color of law, violated his or her rights as guaranteed by the Constitution or laws of the United States. See Adickes, 398 U.S. at 150. Mollette claims that Defendants, acting under color of state law, violated his Fourth Amendment rights when they used excessive force during the course of his arrest. See Walton v. City of Southfield, 995 F.2d 1331, 1342 (6th Cir. 1993) (holding that individuals have the right to be free from use of excessive force).

It is undisputed that Defendants were acting under color of state law that evening. The only question is whether the force they used against Mollette was excessive. The amount of

7

force used against Mollette does not appear to be at issue. It is undisputed that, without warning, Officer Richardson approached Mollette from behind and used an arm-bar hold to take Mollette to the ground, causing Mollette to land face-first on the pavement. It is also undisputed that the officers put their collective weight on top of him, delivered numerous knee strikes to Mollette's side, maced him two times in the face, punched him several times in the side with their fists, and hit him with a flashlight.

Defendants contend that this use of force was necessary to subdue Mollette and effect his arrest. Mollette vehemently disagrees. He contends that there are no genuine issues of material fact and that the force used against him was excessive as a matter of law.

The Supreme Court has held:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.

Graham v. Conner, 490 U.S. 386, 396-97 (1989). Three factors are generally considered to determine whether force was reasonable under the circumstances: (1) "the severity of the crime at issue;" (2) "whether the suspect poses an immediate threat to the safety of the officers or others;" and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

The question of whether police officers used excessive force in effecting an arrest is one that is extremely fact intensive and hence dependent upon the unique circumstances of each case.

According to Mollette, when Officer Paige first intervened and Crayton identified

8

himself as a cop, Mollette protested, "He can't be a cop. He just tried to mug me." Officer Paige then grabbed Mollette by the arm, and Mollette pulled away. Almost immediately, the other officers took Mollette to the ground and proceeded to beat him. (Mollette Dep. at 60-61). Mollette argues that these officers, who had just arrived on the scene, did not know what crime Mollette had committed, if any. Mollette also argues that he was unarmed and posed no threat to the officers or anyone else. Mollette denies that he was actively resisting arrest or attempting to flee. He claims that he was simply trying to get his hands to the ground so that he could push his face off the pavement to protect himself from further injury. Citing City of Columbus v. Fraley, 41 Ohio St. 2d 173, 180, 324 N.E.2d 735, 740 (Ohio 1975), Mollette argues that, because the force used was excessive and unnecessary, he was entitled to protect himself.

Defendants, however, note that Officer Paige observed Mollette punch Deputy Crayton in the face. (Paige Dep. at 17-18). Moreover, when Officer Paige grabbed Mollette by the arm, Mollette pulled away from him. (Mollette Dep. at 59-61). Officer Richardson, who observed Mollette pull away from Paige, used an arm-bar hold to take Mollette to the ground. (Richardson Aff. ¶¶ 5-6). It is undisputed that, prior to being taken to the ground, no one told Mollette that he was under arrest, and no one asked him to lay down or to submit to being handcuffed. (Crayton Dep. at 54). Defendants contend that there was no time for that. A large crowd had gathered to watch the fight, Mollette had already tried to break free of Paige's grasp, and it was necessary to quickly handcuff Mollette to protect other people in the vicinity.

Mollette admits that as the officers were trying to get his hands behind his back, he was trying to push himself up from the pavement, and that it took "five to ten minutes" for them to handcuff him. (Mollette Dep. at 72-73, 86). Although he denies that he was actively resisting

9

arrest, the officers testified that Mollette put up quite a fight. Paden testified that Mollette was "[m]oving his arms, struggling, kicking, thrashing his body, trying to get up," and was pulling away from the officers. (Paden Dep. at 21; Paden 10/19/05 Aff. ¶¶ 4-6). Paden also testified that Mollette refused to put his hands behind his back so that the officers could handcuff him, and that Mollette "fought us for quite a period of time." (Id. at 25-26; Paden 10/19/05 Aff. ¶¶ 4-6). Even after being handcuffed, Mollette continued to kick his feet, necessitating the use of a hobble strap. (Paden 10/19/05 Aff. ¶ 6). Officer Richardson also stated that Mollette refused commands to put his hands behind his back, and kept putting his arms under his body and resisted by flailing his arms, kicking his feet, and trying to get up. (Richardson Aff. ¶¶ 5-6).

Sergeant Barnes acknowledged that Mollette's face was hitting against the pavement, but testified that it was "absolutely out of the question" that Mollette was simply trying to protect himself. He testified that Mollette "wasn't compliant in any manner whatsoever. It was a violent struggle, resisting our orders with what it was we wanted him to do." (Barnes Dep. at 32). Likewise, Paden stated that "[i]t was never my observation or belief that Mollette was just trying to protect himself . . . Mollette failed to respond to loud, verbal commands and . . . impeded our efforts to take him into custody." (Paden 11/11/05 Aff. ¶ 6).

In support of his motion for summary judgment, and his claim that he is entitled to judgment as a matter of law, Plaintiff cites to numerous cases including Adams v. Metiva, 31 F.3d 375 (6th Cir. 1994), Champion v. Outlook Nashville, Inc., 380 F.3d 893 (6th Cir. 2004), Alexander v. Newman, 345 F. Supp. 2d 876 (W.D. Tenn. 2004), and Phelps v. Coy, 286 F.3d 295 (6th Cir. 2002). The Court agrees with Defendants that these cases are factually distinguishable. They all stand for the proposition that, as a matter of law, it is unlawful to

10

continue to use force against an arrestee who has already been subdued by the police or, in the case of Lewis v. Downs, 774 F.2d 711 (6th Cir. 1985), were being restrained by others.  In Mollette's case, however, all of the alleged uses of force occurred before he was handcuffed and, according to Defendants, were necessary to bring him under control and effect his arrest.

Plaintiff also cites to cases in which courts have held that police officers were not entitled to qualified immunity on claims of excessive force, Solomon v. Auburn Hills Police Department, 389 F.3d 167 (6th Cir. 2004), and cases in which courts have held that genuine issues of material fact precluded summary judgment in favor of the law enforcement officers on claims of excessive force, Bass v. Robinson, 167 F.3d 1041 (6th Cir. 1999).  However, Plaintiff cites to no factually similar case in which a plaintiff was granted summary judgment.

As noted above, the parties have presented conflicting evidence concerning what transpired during the course of Mollette's arrest.  In the Court's view, there are factual disputes that must be determined by a jury before it can be determined whether the amount of force used by the officers against Mollette was reasonable and necessary.  These genuine issues of material fact preclude summary judgment.

**IV.**     **Conclusion**

For the foregoing reasons Plaintiff Mollette's motion for partial summary judgment (Record at 37) is **DENIED.**

**IT IS SO ORDERED.**

Date: March 29, 2007                                           /s/ **John D. Holschuh**
                                                                               John D. Holschuh, Judge
                                                                               United States District Court